## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RALPH ABREU,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 1:19-cv-20** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SUPERINTENDENT** | : | |
| **TAMMY FERGUSON,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment filed by Defendant Lieutenant D. Kauffman ("Kauffman"). (Doc. No. 34.) *Pro se* Plaintiff Ralph Abreu ("Plaintiff") has filed neither a brief in opposition nor a motion seeking an extension of time to do so. Accordingly, because the time period for Plaintiff to respond has expired, Defendant Kauffman's motion for summary judgment is ripe for disposition.

## I. BACKGROUND

Plaintiff is currently incarcerated at the State Correctional Institution Greene in Waynesburg, Pennsylvania ("SCI Greene"). He initiated the above-captioned action on January 4, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Superintendent Tammy Ferguson ("Ferguson"), Captain John Doe, Kauffman, Secretary John Wetzel ("Wetzel"), and Jane or John Does 1-3 regarding events that occurred while he was incarcerated at SCI Benner Township. (Doc. No. 1.) Plaintiff

raises claims for alleged violations of his First, Eighth, and Fourteenth Amendment rights after his visitation with his girlfriend was terminated because Plaintiff was suspected to be passing drugs. (*Id.* ¶¶ 10, 13.) Plaintiff was placed in a dry cell and subsequently was placed in the Restricted Housing Unit ("RHU") where he received a misconduct. (*Id.* ¶¶ 17, 25-26, 30.) Plaintiff alleges that Defendants: (1) violated his First Amendment right to freely associate with his girlfriend; (2) retaliated against him for his association with other Hispanic inmates; (3) violated his First Amendment right to free speech by placing him in the dry cell; (4) violated the Eighth Amendment by placing him in a dry cell; (5) discriminated against Plaintiff; (6) violated his right to due process by arbitrarily suspending his visitation; (7) intentionally inflicted emotional distress; and (8) conspired to harass him for not participating in a drug investigation.

In a Report and Recommendation dated January 28, 2019, Magistrate Judge Carlson recommended that Plaintiff's complaint be dismissed with prejudice as to Defendants Ferguson and Wetzel and that Plaintiff's claim for a specified sum of unliquidated damages be stricken. (Doc. No. 14.) In an Order dated March 26, 2019, the Court adopted in part and rejected in part the Report and Recommendation, striking Plaintiff's claim for a specified sum of unliquidated damages and dismissing his claims against Defendants Ferguson and Wetzel without prejudice to his right to

file an amended complaint. (Doc. No. 18.) Subsequently, Plaintiff filed a motion to amend, noting that he wished to dismiss Defendants Ferguson and Wetzel and Defendants and proceed on his complaint as originally filed against the remaining Defendants. (Doc. No. 19.) In an Order dated April 25, 2019, the Court granted Plaintiff's motion, dismissed Defendants Ferguson and Wetzel, and directed service of the complaint upon the remaining Defendants. (Doc. No. 20.)

The parties subsequently engaged in discovery, which closed on December 23, 2019. In an Order dated January 14, 2020, the Court directed Plaintiff to provide identifying information for the John Doe Defendants within thirty (30) days. (Doc. No. 33.) Plaintiff was advised that failure to identify and serve the John Doe Defendants would result in their dismissal pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (*Id.*) Plaintiff neither provided such information nor moved for an extension of time to do so. Accordingly, in an Order dated February 25, 2020, the Court dismissed all John Doe Defendants without prejudice pursuant to Rule 4(m). (Doc. No. 37.) Therefore, Defendant Kauffman is the sole remaining Defendant.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the

nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to

be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at \*5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at \*4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[1]

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendant Kauffman's Rule 56.1 statement of material facts. (Doc. No. 36.)

Plaintiff did not file a response to Defendant Kauffman's statement of facts in compliance with M.D. Pa. L.R. 56.1. Plaintiff included the following verification in his complaint: "I, Ralph Abreu, hereby verif[y] that all statements alleged throughout this complaint [are] correct and true except those made upon information and belief and as for those statements plaintiff believes them to be correct and true as well." (Doc. No. 1 at 15.) While a verified complaint can be treated as an affidavit for purposes of summary judgment, *see Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at \*2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and

6

Plaintiff is a Hispanic male who was incarcerated at SCI Benner Township during the relevant time period. (Doc. No. 36 ¶ 6.) Defendant Kauffman was a Security Lieutenant at SCI Benner Township during that time. (*Id.* ¶ 7.) On February 3, 2017, Plaintiff was visiting with his girlfriend when the visit was "suddenly terminated." (*Id.* ¶ 8.) Plaintiff was escorted to the security office to "discuss with Defendant Kauffman a concern that Plaintiff was passing drugs to his visitor." (*Id.* ¶ 9.)

Plaintiff was placed in a dry cell until February 7, 2017. (*Id.* ¶ 10.) When he was released from the dry cell he was placed in the RHU, where he received Misconduct No. B986659. (*Id.* ¶ 11.) That misconduct was written by Officer Klinefelter and was dismissed without prejudice by a hearing examiner. (*Id.* ¶¶ 12-13.) Defendant Kauffman wrote a second misconduct, No. 986673. (*Id.* ¶ 14.) That misconduct was also dismissed by a hearing examiner. (*Id.* ¶ 15.) Plaintiff was subsequently placed on Administrative Custody ("AC") status by Officer Klinefelter. (*Id.* ¶ 16.) His visitation rights have since been reinstated. (*Id.* ¶ 17.)

---

based on personal knowledge."), Plaintiff's complaint is not verified because it was not signed under penalty of perjury. *See Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) (concluding that because verified complaint was signed under penalty of perjury it was the equivalent of an affidavit). Indeed, Plaintiff never signed his complaint. It cannot, therefore, be treated as an opposing affidavit for purposes of summary judgment. *See Grindling v. Loo*, No. 06-00460 JSM-KSC, 2007 WL 2106282, at *1 n.1 (D. Haw. July 12, 2007). Accordingly, the Court deems the facts set forth by Defendant Kauffman to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

## IV. DISCUSSION

Defendant Kauffman asserts that summary judgment is proper because: (1) Plaintiff has failed to properly prosecute this matter and (2) Plaintiff's various claims fail as a matter of law. The Court considers each argument in turn.

### A. Dismissal for Failure to Prosecute

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to prosecute or comply with these rules or order of court." *See* Fed. R. Civ. P. 41(b). District courts have the inherent power to dismiss an action for failure to prosecute *sua sponte*. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). When determining whether to dismiss an action for a plaintiff's failure to prosecute under Rule 41(b), the Court must balance six (6) factors set forth in *Poulis v. State Farm Fire and Casualty Company*, 747 F.2d 863 (3d Cir. 1984). These factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Id.* at 868. Not all of the *Poulis* factors must be satisfied in order for a court to dismiss a complaint. *See Shahin v. Delaware*, 345 F. App'x 815, 817 (3d Cir. 2009); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

Defendant Kauffman asserts that the first, second, fourth, and sixth factors weigh against Plaintiff because as a *pro se* plaintiff, he is "personally responsible" for delays in his case. (Doc. No. 35 at 7.) Defendant Kauffman also maintains that he served Plaintiff with discovery and that Plaintiff failed to respond to those requests despite acknowledging their receipt. (*Id.*) He argues that as for the fifth factor, Plaintiff could be sanctioned by "limiting the evidence he could present at trial; however, that alternative sanction would still require Defendant to expend time and resources defendant an action Plaintiff claimed he would dismiss." (*Id.* at 8.)[2]

The Court agrees with Defendant Kauffman that as a *pro se* litigant, Plaintiff "bears all of the responsibility for any failure to prosecute his claims." *Winston v. Lindsey*, No. 1:09-cv-224-SJM, 2011 WL 6000991, at *2 (W.D. Pa. Nov. 30, 2011). With respect to the second factor, however, the Court does not find Defendant Kauffman's arguments persuasive. At no time did Defendant Kauffman move for a Court Order compelling Plaintiff to respond to discovery requests. Moreover,

---

[2] Plaintiff asserted during his deposition that he wished to dismiss this action against Defendant Kauffman. (Doc. No. 36 ¶ 18.) However, Plaintiff never submitted a notice of voluntary dismissal to the Court.

Defendant Kauffman was able to take Plaintiff's deposition. Thus, the Court cannot conclusively state that Defendant Kauffman was prejudiced by Plaintiff's failure to respond to certain discovery requests.

With respect to the third factor, neither party has a history of dilatoriness. As to the fourth factor, generally, "[w]illfullness involves intentional or self-serving behavior." *Adams v. Trustees of N.J. Brewery Employees' Penson Trust Fund*, 29 F.3d 863, 875 (3d Cir. 1994); *see also Emerson v. Thiel Coll*, 296 F.3d 184, 191 (3d Cir. 2002) (finding bad faith because the conduct went beyond mere negligence). While Defendant Kauffman asserts that the "continuation of this matter in spite of Plaintiff's desire to dismiss this action against [him] would be in bad faith," the record is insufficient to conclude that Plaintiff's conduct is willful or in bad faith.

With respect to the fifth factor, Defendant Kauffman concedes that other possible sanctions are available. (Doc. No. 35 at 8.) As noted above, however, Defendant Kauffman never asked the Court to compel Plaintiff to respond to discovery requests. Had he done so, the Court could have advised Plaintiff that failure to respond to those requests could have resulted in the dismissal of this action for failure to prosecute. Thus, the Court concludes the fifth factor does not weigh in favor of dismissal. Finally, as discussed below, Plaintiff's claims against Defendant Kauffman do lack merit. Thus, the sixth factor does weigh in favor of dismissal.

In sum, the Court concludes that only two (2) of the six (6) *Poulis* factors weigh in favor of dismissal for failure to prosecute.  The Court is "mindful that dismissal is an extreme sanction because it deprives a litigant of his or her day in court."  *Stafford v. Derose*, No. 3:09-cv-346, 2015 WL 1499833, at *3 (M.D. Pa. Apr. 1, 2015).  Thus, the Court declines to dismiss the above-captioned case for failure to prosecute and instead will consider the merits of Plaintiff's claims against Defendant Kauffman below.

## B. Plaintiff's Claims for Relief

### 1. First Amendment Claims

#### a. Freedom of Association

Plaintiff first alleges that Defendant Kauffman violated his First Amendment right to freedom of association by terminating his visitation rights.  (Doc. No. 1 ¶ 46.)  Inmates, however, "have no unfettered constitutional right to visitation free of regulation."  *Rieco v. Hebe*, 633 F. App'x 567, 570 (3d Cir. 2015) (citing *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 758 (3d Cir. 1979)); *see also Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (observing that "freedom of association is among the rights least compatible with incarceration").  In the instant case, there is no evidence that Defendant Kauffman was present when Plaintiff's visit with his girlfriend was terminated and no evidence that Defendant Kauffman was involved

in the decision to temporarily suspend Plaintiff's visitation rights. Accordingly, the Court will grant summary judgment to Defendant Kauffman with respect to this claim.

### b. Retaliation

Plaintiff also alleges that Defendant Kauffman retaliated against him for associating with other Hispanic inmates and for not providing information about his friends. (Doc. No. 1 ¶¶ 49-50.) He alleges that Defendant Kauffman retaliated by placing him in the dry cell. (*Id.* ¶ 50.)

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*,

241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials

can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In the instant case, nothing in the record suggests that Plaintiff engaged in constitutionally protected activity. Several courts, including courts within the Third Circuit, have concluded that the refusal to act as an informant or provide information regarding fellow inmates is not constitutionally protected activity. *See, e.g., Anderson v. Dohman*, No. 18-cv-3508, 2018 WL 4186396, at *5 (E.D. Pa. Aug. 30, 2018) (refusal to provide names of allegedly "dirty" officers was not protected activity); *Woolfolk v. Meier*, No. 2:17-cv-3513, 2018 WL 1773397, at *4 (E.D. Pa. Apr. 12, 2018) (dismissing prisoner's retaliation claim because prisoner's refusal to provide information about which prisoners possessed contraband was not protected activity); *Jackson v. Dohman*, No. 11-6890, 2013 WL 775598, at *2-3 (E.D. Pa. Mar. 1, 2013) (explaining that a prisoner has no protected right to refuse to give information to officials in connection with an internal investigation); *see also Ayala v. Harden*, No. 1:12-cv-281-AWI-DLB PC, 2012 WL 4981269, at *2 (E.D. Cal. Oct. 17, 2012) ("Refusal to become an informant is not a protected First Amendment activity."); *Hermosillo v. Santa Clara Cty.*, No. C 08-915 JF (PR), 2008 WL 2156994, at *2 (N.D. Cal. May 21, 2008) (concluding that the refusal to cooperate with officials as an informant is not protected activity). Moreover, Plaintiff has not

provided, and the Court has not located, any authority suggesting that simply associating with other inmates is protected activity. *Cf. Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (noting that "[t]he Constitution does not recognize a generalized right of social association"). In any event, nothing in the record suggests that Defendant Kauffman took action solely based upon Plaintiff's association with other Hispanic inmates. Accordingly, the Court will grant summary judgment to Defendant Kauffman with respect to Plaintiff's retaliation claim.

### c.      Freedom of Speech

Plaintiff also maintains that Defendant Kauffman violated his First Amendment right to freedom of speech by placing him in a dry cell. (Doc. No. 1 ¶ 50.) "[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment." *Beard v. Banks*, 548 U.S. 521, 528 (2006). The Constitution, however, "sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." *See id.* To recover under § 1983 for a violation of this First Amendment right, a plaintiff "must allege that the defendant intended to inhibit speech protected by the First Amendment, and that his 'speech was in fact chilled or intimidated.'" *See Proverb v. O'Mara*, No. 08-cv-431-PB, 2009 WL 368617, at *14 (D.N.H. Feb. 13,

2009) (quoting *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989)).  In the instant case, nothing in the record establishes that Defendant Kauffman acted in any way intended to inhibit Plaintiff's right to free speech or expression.  Accordingly, the Court will grant summary judgment to Defendant Kauffman as to this claim.

### 2.    Eighth Amendment Claims

Next, Plaintiff maintains that Defendant Kauffman violated his Eighth Amendment rights by placing him in the dry cell.  (Doc. No. 1 ¶ 53.)  He asserts that his Eighth Amendment rights were further violated when he was forced to spend time in the dry cell "naked, chained to a bed, without toilet paper, ability to shower or go outside for recreation, having private parts constantly exposed to female personnel, [and] being under constant lighting and meaningless investigations." (*Id.*)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards.  An Eighth Amendment claim includes both objective and subjective components.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.

16

*See id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *See id.*

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer*, 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson*, 503 U.S. at 9.

In the instant case, the record reflects that Plaintiff was in the dry cell from February 3-7, 2017. (Doc. No. 35-1 at 17.) The Third Circuit has recognized that "even though administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth

Amendment." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020). Here, Plaintiff does not challenge the duration of his time in the dry cell, but instead challenges various conditions and deprivations he allegedly suffered during his confinement therein. The evidence before the Court, however, establishes only that Defendant Kauffman escorted Plaintiff to the dry cell. (Doc. No. 35-1 at 20.) In his deposition, Plaintiff stated that he did not see Defendant Kauffman after that during his time in the dry cell. (*Id.*) Thus, the evidence of record does not provide a sufficient basis upon which a reasonable jury could conclude that Defendant Kauffman had knowledge of the alleged conditions of confinement in the dry cell. Plaintiff, therefore, cannot maintain his Eighth Amendment claim, and summary judgment will be granted to Defendant Kauffman. *See Thomas*, 948 F.3d at 139 (concluding same).

### 3. Fourteenth Amendment Claims

### 1. Equal Protection

Plaintiff alleges that Defendant Kauffman violated his equal protection rights by engaging in "class of 1 discrimination, singling him out and treating him differently intentionally [than] any other DOC inmate in regards to suspending his visitation." (Doc. No. 1 ¶ 51.) The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. *City of Cleburne v. Cleburne*

18

*Living Ctr.*, 473 U.S. 432, 439 (1985).  Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).

However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  *See id.*  "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007).  When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice.  *See Young v. New*

*Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

As an initial matter, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). Moreover, Plaintiff provides no evidence that Defendant Kauffman intentionally treated him differently from other inmates who are suspected of introducing contraband into the facility. In his deposition, Plaintiff stated that he was treated differently because he was "a little cocky" and that he "feel[s] like [he] brought it to [himself]." (Doc. No. 35-1 at 28.) Such does not rise to the level of a "class of one" equal protection claim. Accordingly, the Court will grant Defendant Kauffman summary judgment with respect to this claim.

### 2.    Due Process

Plaintiff next maintains that Defendant Kauffman violated his due process rights by arbitrarily suspending his visitation with others. (Doc. No. 1 ¶ 59.) As noted above, however, there is no evidence of record that Defendant Kauffman was involved in the suspension of Plaintiff's visitation. In any event, a temporary loss of visitation does not qualify as an atypical or significant hardship warranting due process protections because "prisoners do not have constitutionally-protected interests in prison visitation." *Perry v. Lackawanna Cty. Children & Youth Servs.*,

345 F. App'x 723, 726-27 (3d Cir. 2009).  Accordingly, Defendant Kauffman is entitled to summary judgment on Plaintiff's due process claim.

### 4.    Civil Conspiracy Claim

Plaintiff also alleges that Defendant Kauffman entered into a civil conspiracy with the other Defendants to harass him and violate his civil rights.  (Doc. No. 1 ¶ 67.)  To maintain an action for civil conspiracy under § 1983, a plaintiff must show "both the deprivation of a constitutional right and the existence of a conspiracy to violate that right." *Wodarski v. Erie Office of Children & Youth Servs.*, No. 10-292, 2012 WL 602933, at *4 (W.D. Pa. Feb. 23, 2012).  As addressed in detail above, the Court has concluded that Defendant Kauffman is entitled to summary judgment on Plaintiff's constitutional claims because there is no evidence in the record before the Court that Plaintiff's constitutional rights were violated.  It follows, therefore, that in the absence of an actual violation of a constitutional right under § 1983, Plaintiff's conspiracy claim necessarily fails.  *See Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) ("As a threshold matter, . . . a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right."); *Gibbs v. Harsky*, No. 98-787 JJF, 2004 WL 1328278, at *3 (D. Del. Mar. 31, 2004) ("Without an underlying constitutional injury, a plaintiff cannot succeed on a civil

conspiracy claim pursuant to Section 1983."), *aff'd*, 122 F. App'x 597 (3d Cir. 2005).

Moreover, to maintain a civil conspiracy claim, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). Moreover, "to successfully counter a motion for summary judgment, a plaintiff must provide specific evidence establishing that defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose." *Payne v. Gordon*, 3:17-cv-1230, 2018 WL 3649026, at *11 (M.D. Pa. Aug. 1, 2018).

Here, the Court agrees with Defendant Kauffman that Plaintiff has failed to introduce into the record any evidence which shows an agreement or plan created and executed by Defendant Kauffman and the other named Defendants that rises to the level of a conspiracy. Without more, Plaintiff's conspiracy claim amounts to

nothing more than mere conjecture and bare speculation, which is not sufficient to demonstrate a genuine issue of fact as to the existence of an agreement designed to deny his constitutional rights. *See Young*, 926 F.2d at 1405 n.16. Accordingly, the Court will grant summary judgment to Defendant Kauffman as to Plaintiff's conspiracy claim.

### 5. Intentional Infliction of Emotional Distress Claim

Finally, Plaintiff alleges that Defendant Kauffman intentionally inflicted emotional distress upon him. (Doc. No. 1 ¶ 63.) He maintains that his placement in the dry cell, suspension of visitation, and "bogus" investigations to justify his placement in the RHU caused him "to attempt suicide and have suicidal thought[s] on several occasions." (*Id.* ¶ 64.) To maintain a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must demonstrate "(1) extreme or outrageous conduct [that] (2) intentionally or recklessly causes (3) severe emotional distress to another." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (citing *Carson v. City of Phila.*, 574 A.2d 1184, 1187 (Pa. Commw. Ct. 1990)). Nothing in the record, however, establishes that Defendant Kauffman acted intentionally or recklessly to cause Plaintiff severe emotional distress.

Moreover, in Pennsylvania, sovereign immunity applies to intentional torts committed by Commonwealth defendants acting in their individual capacities. *See Sears v. Mooney*, No. 1:17-cv-50, 2019 WL 6726839, at *17 (M.D. Pa. Dec. 11, 2019) (citation omitted). Sovereign immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" *Larsen v. State Emps' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). Here, the evidence of record demonstrates that Defendant Kauffman was acting with the scope of his employment. Accordingly, he is entitled to sovereign immunity as well. Thus, the Court will grant his motion for summary judgment with respect to Plaintiff's claim for intentional infliction of emotional distress.

## V. CONCLUSION

For the foregoing reasons, Defendant Kauffman's motion for summary judgment (Doc. No. 34) will be granted. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: March 17, 2020